# Cleveland & Western Coal Co., Appellant, *v.* Cyclops Steel Co.

*Contract—Construction—Sale for future delivery—Performance —Strikes—Normal condition—Rescission—Ejusdem generis.*

1. Where a contract of sale for future delivery by installments provides in a numbered paragraph that "fulfillment of the contract is based upon normal conditions," and that under certain enumerated physical contingencies the seller should be relieved from performance, and a later numbered paragraph provides that "in case of strikes or other contingencies" beyond the control of the buyer, the latter shall be relieved from performance, the court cannot read the phrase relating to "normal conditions" in the former paragraph into the later paragraph.

2. In such case the words "other contingencies" in the later paragraph do not cover business depressions, so that the buyer can set up such depressions as an excuse for refusal to accept deliveries.

3. The words "other contingencies" following as they do the word "strikes," must be construed ι der the ejusdem generis rule, to include contingencies only of a like nature, in the sense of direct physical preventives of some sort.

4. Even if the words "normal conditions" were read into the later paragraph, they must be construed as physical conditions and do not cover business depressions.

5. Inasmuch as business depressions occur with something like periodic frequency, it would be most unusual to permit them to relieve one from an obligation to accept goods contracted for, in the absence of either a plain stipulation or an evident and all-prevailing intendment to that effect.

Argued September 26, 1923. Appeal, No. 166, Jan. T., 1923, by plaintiff, from judgment of C. P. Crawford Co., Sept. T., 1921, No. 11, on verdict for defendant, in case of Cleveland & Western Coal Co. v. Cyclops Steel Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit for breach of contract of sale. Before PRATHER, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were various rulings and instructions, appearing by the opinion of the Supreme Court, quoting record.

*Arthur L. Bates,* with him *C. F. Taplin* and *E. L. Baker,* for appellant.—Under the terms of the contract, the buyer was not excused from performance: Cottrell v. Fuel Co., 148 Fed. 594; Dermott v. Jones, 69 U. S. 1; Arkell & Douglas, Inc., v. Borenstein, 176 N. Y. Sup. 581; Smokeless Fuel Co. v. Seaton, 105 Va. 170.

Under the rule of ejusdem generis the phrase "or other contingencies arising which are beyond the control of the buyer" following as it does the word "strikes" must be construed to include contingencies only of a like kind or character. A strike is an external cause—something entirely unpreventable. When it occurs production is stopped. A business depression is of no such character.

*E. H. Wicks,* with him *Morris, Walker & Boyle,* for appellee.—The sentence in the contract reading "Fulfillment of the contract is based upon normal conditions" is applicable to buyer and seller alike: White v. Smith, 33 Pa. 186; Abbott's Est., 198 Pa. 493.

If normal conditions or business did not exist and defendant was, therefore, obliged to close down its plant, it was justified in suspending deliveries.

The doctrine of ejusdem generis is not so strictly adhered to in Pennsylvania as in some other jurisdictions: Hatfield v. Iron Co., 208 Pa. 478.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 7, 1924:

In this action of assumpsit, the jury rendered a verdict for defendant, judgment was entered accordingly, and plaintiff has appealed.

The suit is to recover damages for breach by defendant of a written contract under which that corporation purchased and agreed to accept coal consigned to it by plaintiff. The clauses of the contract with which we are here particularly concerned provide as follows:

"8. Fulfillment of this contract is based upon normal conditions obtaining in every respect during the life thereof. In case of variance therefrom, as in the case of any war or insurrection affecting it, or in the case of disasters, breakdowns, fires, or other accidents at the mines, or in the case of shortage of cars, interruption of car service, strikes, labor agitations or disturbances, shortage of labor supply, or any other causes beyond the seller's control, the percentage that production or delivery is reduced thereby shall be the percentage of the tonnage deliverable hereunder during the period of such variance which will be regarded as cancelled, without liability upon the seller for damages resulting therefrom.

"9. In case of strikes or other contingencies arising, which are beyond the control of the buyer and which cause the stoppage or partial stoppage of the plant or business of the buyer, deliveries as contracted for herein may, upon the buyer's request, be suspended, or partially suspended, during such stoppage. So much of the contracted tonnage as delivery of is thus suspended shall be regarded as cancelled, without obligation upon the seller to thereafter ship."

In December, 1920, defendant, because of (to use its own words) "business depression and lack of orders for tool steel," refused to accept coal deliveries tendered to it; whereupon, plaintiff disposed in the open market of the coal purchased by defendant, charging the difference between the contract and the market price to the latter, and, upon its refusal to pay this difference, instituted the present suit.

As stated in the brief of appellee, the controlling question in the case is one of law, "as to whether any clauses of the contract excused or justified defendant in refusing

to accept further deliveries of coal, [particularly] whether the closing down of the buyer's plant, due to business depression, was one of the conditions named in the contract permitting cancellation by the buyer."

The trial judge refused plaintiff's second request for charge, to the effect that "the closing down of the plant of defendant, or the partial stoppage of its business caused by a business depression which made it unprofitable to continue such a plant or business in operation, would not of itself be a contingency beyond defendant's control which would excuse defendant's failure to take and accept coal." Appellant assigns this refusal as error, and contends the court below erred throughout the trial in treating the alleged business depression as a legal excuse for defendant's not accepting the coal tendered by plaintiff, and thus in effect leaving to the jury only the question as to the existence and nature of such depression. All the assignments of error go, directly or indirectly, to this one point.

The court below lays much stress on that part of the agreement between the parties which reads, "Fulfillment of this contract is based upon normal conditions obtaining in every respect during the life thereof"; and it reaches its conclusion, that there was no failure to fulfill on the part of defendants, by attaching the above quoted words (which occur at the beginning of section 8) to section 9 of the contract, treating the phrase "other contingencies," in this section, as covering business depressions, and considering the verdict of the jury as comprehending a finding that the economic conditions existing during the period of defendant's refusal to receive coal prevailed generally throughout the steel trade and completely paralyzed the business of concerns such as the defendant.

Appellant contends the court below gave undue significance to all of the above matters. It argues that section 8 of the contract has to do exclusively with the noncompliance privileges of the seller and section 9 with like

privileges of the buyer; that the phrase as to "fulfill-ment," quoted above, cannot properly be detached from its context; that, even if it were detached, the word "fulfillment" is used simply as a synonym for deliveries by seller; finally, that, however these contentions may be viewed, the closing down of defendant's plant because of a business depression would not be an excuse which, under the present contract, would relieve that corpora-tion from its obligation to receive and pay for coal tendered to it. As we agree with the last stated conten-tion, it is unnecessary to consider the others.

Since business depressions occur with something like periodic frequency, it would be most unusual to permit them to relieve one from an obligation to accept goods contracted for, in the absence of either a plain stipu-lation or an evident and all prevailing intendment to that effect; nothing of the kind appearing in the present contract, the general phrase "other contingencies," in section 9 thereof, relied on by defendant, cannot properly be construed to include business depressions, but, under the ejusdem generis rule, the "other contingencies" re-ferred to, following the word "strikes" as the phrase in question does, must be construed to include contingen-cies only of a like nature, in the sense of direct physical preventives of some sort. The words employed do not comprehend stagnation of business because of economic unprofitableness and other such indirect nonphysical causes. In fact, every excuse for noncompliance speci-fied by the contract, whether affecting what the writing calls "normal conditions," the facilities of the seller, or the stoppage of the plant or business of the buyer, has the aspect of a physical preventive with a direct effect, as distinguished from abstract economic causes that may influence managerial policy, which, in turn, may affect the operation of the plant or business in question.

The word "conditions," in the phrase "normal condi-tions," at the beginning of the eighth section, when read

in connection with what immediately follows it, plainly means physical conditions affecting the industry in question, and not general economic business conditions; though, so far as the present contract is concerned, a "business depression" would not be other than a "normal condition." This being the case, even if the first part of the eighth section were read in connection with the ninth, our ultimate conclusion would be the same,—that the court below erred in treating the business depression here relied on as releasing defendant from its obligation to accept and pay for the coal tendered by plaintiff.

All of the cases cited by both sides can be distinguished on their facts from the present one, and it would serve no good purpose to discuss them in particular; suffice it to say, we find no ruling therein which conflicts with the views here expressed.

. The assignments of error are sustained and the judgment is reversed with a venire facias de novo.